UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KENTRELL HARTON                                    CIVIL ACTION

VERSUS                                             NO. 13-6757

SHERIFF MARLIN GUSMAN ET AL.                       SECTION "E" (2)

## REPORT AND RECOMMENDATION

At the time of filing this complaint, plaintiff Kentrell Harton, was a prisoner incarcerated in the Orleans Parish Prison system ("OPP").[1] He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman alleging that while incarcerated in OPP, he was subjected to various unconstitutional conditions of confinement. He requests "[i]mmeadiate (sic) court action," punitive and compensatory damages. Record Doc. No. 3 (Complaint at ¶¶ IV and V). On March 25, 2014, I conducted a telephone conference in this matter. Harton appeared in person, and was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

During his testimony, Harton confirmed that he asserts a single claim in this case, that he was exposed to unconstitutional conditions of confinement while incarcerated in

---

[1] On March 10, 2014, plaintiff informed my office by telephone that he had been released from incarceration at OPP. Record Doc. No. 11.

the tents unit of OPP. Harton testified that the incidents about which he complains occurred during his incarceration in OPP as a pretrial detainee for about four (4) months, from around October 24, 2013, when he was arrested on a domestic violence charge, until the end of February 2014, when he was released on bond.  Plaintiff testified that at the time of the conference the domestic violence charges against him remained open and that he was scheduled to return to court on April 9, 2014.

Harton testified that his claims concern unsanitary conditions in the "Tent  City" unit of OPP, where he was housed in Tent 3 for about one (1) month.  He stated that after he made the claim concerning the conditions, he was moved to another location at the jail and no longer experienced the conditions he complains about.

As to the claim in his complaint concerning raw sewage leaking out of a pipe into a bathroom area on October 20, 2013, plaintiff testified that there were "actually leaches" and only three working toilets where "maybe a hundred of us" were housed in the tent. Plaintiff said that although there were other toilets, they were not working and "a lot of them overflowed. . . .  It must [have been] the main pipeline . . . that sits in the middle of the restroom area. . . . That pipe overflowed to the floor."

Harton stated that the inmate tier representative and an inmate cleanup crew tried to "contain the problem as much as possible."  He said that the sewage problems began before he arrived in Tent 3 and were not fixed during the time he was incarcerated in that

area. He said that, although he and other inmates "brought the problems to the lieutenant, . . . wrote grievances," and "all got together . . . writing up petitions hoping that they would be able to help us, . . . instead they ignored us."

Harton said the leak resulted in "pretty much nasty" conditions, including "stand[ing] in these feces. . . . because . . . they arranged us to go in the bathroom area" at roll call, and only three working showers for "100 people on the dorm," with one shower providing only cold water. Plaintiff stated that the entire tent, which was "supposed to house I think 64, maybe 84" inmates, was affected by the leak because feces was tracked into the "living part where we have to eat at, other parts where we have to sleep at . . ." by inmates who stood in it in the restroom area during roll call. Plaintiff stated that some inmates had to sleep on the floor, so that "you smell feces through the whole tent – it was pretty horrible . . . ." He testified that the unsanitary conditions continued for the whole month that he was in the Tent 3 unit, after which he was moved to a clean and new area of the jail which he identified as TDC – Temporary Detention Center and described as "pretty brand new" and "pretty clean."

Harton further testified that the 90 to 100 inmates housed with him in Tent 3 constituted overcrowding, and included "guys on the dorm with diseases," such as hepatitis, tuberculosis and HIV positive inmates, who should have been housed on a separate tier.

-3-

Harton stated that he and other inmates slept on a mattress on the floor.  He said his mattress was "next to the bathroom, so you smell it all night.  It was horrible."  He estimated that "there wasn't (sic) that many" inmates who had diseases.  "I know for sure it was only one guy with HIV. . . . He slept way in the front by himself and maybe an old elderly man with tuberculosis.  He coughed a lot all night. . . . They had a few guys that admitted to the lieutenant [what their] conditions were.  They weren't supposed to be in regular population with us.  They were supposed to be on a medical tier . . . ."

Harton confirmed that he had received and reviewed a copy of the medical records produced by defendants in response to my order, Record Doc. Nos. 5 and 12, and that they are accurate.

Asked if he had contracted any diseases or illnesses while being housed in OPP, Harton stated, "Well no, I haven't contracted any," but due to "long-term effect injuries [which] might not show up now, but it can bother us like maybe in the future," a doctor had recommended that he be tested every six months.  He confirmed that he has been tested as recommended by the doctor and has not tested positive for any diseases, including tuberculosis, hepatitis, HIV or anything else.  "So far, so good," he said.

The medical records indicate that Harton was given a chest X-ray in December 2013 by OPP medical staff, which was reviewed by a doctor and found negative as to any diseases.

When asked if he suffered any kind of health effects as a result of his exposure to the conditions in OPP, plaintiff testified that he experienced "nauseation" and a sore throat.  He said, "[w]e all was (sic) experiencing these side effects but we didn't know where it was coming from. . . . Several inmates . . . put a complaint in but, when they looked at us, they [kept] saying well, you're normal [and] maybe it's just the allergies that's in the air.  We didn't know what it was, but I know we were exposed to human waste and . . .  you don't know what that will bring . . . . or what it can cause us, so we were just trying to get it checked on as much as possible, every chance that we could."

Harton confirmed the allegation in his complaint that he sent a grievance through the prison administrative remedies procedure concerning the conditions in Tent 3.  He said that although the grievance was reviewed, he received no response and nothing was done about the conditions, so "we looked at it as being ignored."

In summary, Harton alleges that "they treated us as if we were just animals. They didn't have no concern for us.  We asked for cleaning supplies . . . . just small things just to make sure the environment . . . is just to livable standards.  We would have to go all week complaining before they decided to bring us . . .  one cup of bleach . . . . to disinfect the tables, the beds, the floors, the walls.  They said 'y'all don't need that. You shouldn't come to jail. . . .'"  However, Harton confirmed that he did <u>not</u> suffer any physical

injuries as a result of the conditions and that his claim for damages in this case is for emotional distress and mental anguish.

ANALYSIS

I.      STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls,

examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law

or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[2]

## II.   CONDITIONS OF CONFINEMENT

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions during his one month period of incarceration in the Tent 3 unit of OPP. Harton was a pretrial detainee at all times that form the basis of his claims in this case. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. <u>McCarty v. Zapata County</u>, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing <u>Gibbs v. Grimmette</u>, 254 F.3d 545, 547 (5th Cir. 2001); <u>Hare v. City of Corinth</u>, 74 F.3d 633, 636 (5th Cir. 1996)); <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 526 (5th Cir. 1999).  In <u>Hare</u>, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had

---

[2] The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1746 (2012) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies. Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Harton's allegations do not constitute violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive

-10-

[plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

Harton's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable and unpleasant, do not rise to a level of seriousness constituting a constitutional violation. Harton conceded

in his testimony that he has suffered no physical injury or illness (other than nausea and a sore throat) as a result of the allegedly unsanitary conditions.  Thus, he alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982).  Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

Harton's allegations about dirty conditions or faulty plumbing at the jail fail to establish constitutional violations.  See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim.  "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment.  In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found <u>no</u> constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" <u>Id.</u> at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  <u>Id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Harton lasting for one month do <u>not</u> rise to the level of a constitutional violation.  The conditions he experienced in OPP Tent 3 were neither virtually permanent nor an <u>extreme</u> deprivation of the type that might offend the Constitution, and he suffered no physical injuries or serious ailments as a result of any allegedly unsanitary conditions.

As to his allegation that the dirty conditions caused him to suffer nausea and a sore throat, Harton's medical records do not support the conclusion that any of these conditions was serious or even related to any unsanitary condition. In addition, unsanitary conditions may rise to the level of a constitutional violation only if they result

in "a serious or significant . . . injury <u>resulting</u> <u>from</u> the challenged conditions." <u>Strickler</u> <u>v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir.), <u>cert. denied</u>, 114 S. Ct. 393 (1993) (emphasis added); <u>accord</u> <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 931 (1994).

Any harm that Harton may have suffered by the minor maladies he describes in this case were not serious and did not rise to the level of a constitutional violation.  <u>See,</u> <u>e.g.</u>, <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists with some bleeding not serious); <u>Griffin v. DeRobertis</u>, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious); <u>cf.</u> <u>Barker v. Brantley County</u>, 832 F. Supp. 346, 352 (S.D. Ga. 1993), <u>aff'd</u>, 19 F.3d 37 (11th Cir. 1994) (pneumonia is serious medical need). Certainly, plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  <u>See</u> <u>Hill v.</u> <u>Dekalb Reg'l Youth Detention Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994), <u>overruled in</u> <u>part on other grounds by</u> <u>Hope v. Peltzer</u>, 536 U.S. 730, 739 (2002) (citing <u>Monmouth</u> <u>County v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); <u>Dickson v.</u> <u>Colman</u>, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).  Harton's nausea and sore throat do <u>not</u> rise to the level of serious medical needs for constitutional purposes.

Similarly, plaintiff's stress, worry and fear of contracting HIV as a result of his very brief and distant exposure to an allegedly HIV-positive inmate do not state <u>serious</u> medical needs for purposes of constitutional analysis. Here, as in <u>Kenyon v. Cheshire Cty. Jail Admin.</u>, No. 92-515-M, 1994 WL 529925 (D.N.H. Sept. 22, 1994), "<u>if</u> [plaintiff] had in fact been exposed to [someone who] carried the AIDS virus, and <u>if</u>" that person's blood had contacted him in a way capable of transmitting the virus, "<u>then</u> plaintiff might have been exposed to a serious, indeed fatal, disease." <u>Id.</u> at *5. Harton's allegations, however, amount only to an assertion that he "<u>might</u> have been exposed to AIDS," which is insufficient to state a claim for relief because "'[a]n unsubstantiated fear of contracting a serious disease is not a basis for a constitutional claim' upon which damages can be awarded." <u>Id.</u> (quoting <u>Quarles v. De La Cuesta</u>, No. 92-5928, 1993 WL 86460, at *1 (E.D. Pa. Mar. 23, 1993)) (citing <u>Glick v. Henderson</u>, 855 F.2d 536, 539 (8th Cir. 1988); <u>Goss v. Sullivan</u>, 839 F. Supp. 1532 (D. Wyo. 1993); <u>Deutsch v. Federal Bureau of Prisons</u>, 737 F. Supp. 261, 267 (S.D.N.Y. 1990), <u>aff'd</u>, 930 F.2d 909 (2d Cir. 1991)); <u>see also</u> <u>Marcussen v. Brandstat</u>, 836 F. Supp. 624, 628 (N.D. Iowa 1993) (no serious medical need when plaintiff alleged mental stress from the fear of contracting HIV, caused by sharing a cell with an allegedly HIV-positive inmate who used plaintiff's toiletries, including his razor, which could cause blood-to-blood transmission of the virus); <u>Johnson v. United States</u>, 816 F. Supp. 1519, 1521, 1524 (N.D. Ala. 1993) (no serious medical needs when plaintiff alleged that he shared a cell with an inmate who

died of AIDS; that his cellmate tampered with his toothbrush, toothpaste, and razor blade; that he observed his cellmate's blood on their sink, toilet and towels on several occasions; and that, during the last few days before his cellmate's death, he was forced to feed and "sanitize" cellmate).

Plaintiff's vague testimony about exposure to an HIV-positive inmate fails to allege any actual physical injury from that exposure.  Although he stated that such an inmate was in Tent 3, he did not know whether he had actually been exposed to the virus. He did <u>not</u> say that he came into contact with the inmate's blood in a way that could transmit the virus. <u>See</u> <u>Stedmans Medical Dictionary</u>, available on Westlaw at STEDMANS 10860 (27th ed. 2000) ("HIV is transmitted from person to person in cell-rich body fluids (notably blood and semen) through sexual contact, sharing of contaminated needles (as by IV drug abusers), or other contact with contaminated blood (as in accidental needle sticks among health care workers).").  He also testified that he has not suffered any health problems as a result of his exposure, if any, other than stress and worry.

To state a claim under 42 U.S.C. § 1983, plaintiff must allege an actual injury caused by the defendants' acts. <u>See</u> <u>Brock v. Sparkman</u>, 101 Fed. Appx. 430, 2004 WL 1368923, at *1 (5th Cir. 2004) (citing <u>Memphis Cmty. Sch. Dist. v. Stachura</u>, 477 U.S. 299, 307 (1986)) (prisoner who had bumps and bruises from repeatedly hitting his head on bunk bed had no cognizable injury); <u>Jackson v. Culbertson</u>, 984 F.2d 699, 700 (5th

Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no injury); Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990) (claims properly dismissed when plaintiff alleged insufficient causal connection between defendants' conduct and the claimed assault, and when plaintiff did not allege constitutional harm); Auster Oil & Gas, Inc. v. Stream, 835 F.2d 597, 602 (5th Cir. 1988) (citing Memphis Cmty. Sch. Dist., 477 U.S. at 307) ("[Section] 1983 is designed to compensate persons for actual injuries caused by the deprivation of constitutional rights."); Jefferson v. City of Hazelhurst, 936 F. Supp. 382, 386 (S.D. Miss. 1995) (To state a cause of action under Section 1983, plaintiff must plead "a direct causal connection, . . . without intervening factors, between the deprivation and some injury to plaintiff.").

As to his claim of overcrowding, Harton alleges that 90 or close to 100 inmates were housed with him in Tent 3, including inmates with diseases, such as hepatitis, tuberculosis and HIV positive inmates, who should have been housed on a separate tier. However, "the mere fact that prisoners are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation. . . .  '[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional.'" Morrison v. Gusman, No. 10-217, 2010 WL 724173, at *7 (E.D. La. Feb. 22, 2010) (Zainey, J.) (quoting Castillo v. Cameron County, 238 F.3d 339, 354 (5th Cir. 2001)) (citing Rhodes, 452 U.S. at 347-50) (additional citations omitted).

Harton alleges no serious harm or risk of serious harm in the constitutional sense. In fact, he concedes that the only illness or other kind of physical problem he experienced as a result of the conditions were nausea and sore throat. Thus, Harton has not alleged sufficiently serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement. Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and his claim concerning the conditions of his confinement must be dismissed for failure to state a cognizable constitutional claim under Section 1983.

III.    <u>NO PHYSICAL INJURY</u>

Harton's claim for relief includes "[i]mmeadiate (sic) court action," punitive and compensatory damages. Record Doc. No. 3 (Complaint at ¶¶ IV and V). This claim is deficient under Section 1983 because Harton testified that he suffered no "physical injury" sufficient to support his claim for monetary damages. Specifically, the Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e): "<u>No</u> Federal civil action <u>may be brought</u> by a prisoner confined in a jail, prison, or other correctional facility, <u>for mental or emotional injury</u> while in custody without a prior showing of physical injury." (Emphasis added).

The Fifth Circuit has consistently enforced the statutory physical injury requirement for prisoners who seek compensatory damages for intangible harm, such as has been alleged by Harton in this case. Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007); Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001). The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" Alexander v. Tippah County, 351 F.3d 626, 631 (5th Cir. 2003) (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar, 112 F.3d at 193); accord Mayes v. Travis State Jail, No. 07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008). Thus, in Alexander, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they suffered were nausea and one incident of vomiting. Id. Similarly, in Siglar, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury. Siglar, 112 F.3d at 193.

In this case, Harton admittedly suffered no physical injuries or illnesses of any kind, except for a sore throat and nausea. As Section 1997e(e) provides and Fifth Circuit case law makes clear, he is precluded as a matter of law from recovering damages for the humiliation or other intangible injury he has asserted.

Furthermore, although Section 1997e(e) allows recovery of punitive and/or nominal damages in an appropriate case, Hutchins, 512 F.3d at 197-98, Harton has

shown no constitutional violation that would entitle him to even nominal damages, "[n]or has [plaintiff] shown the 'evil intent' or 'callous indifference' required to obtain punitive damages." Allen v. Stalder, 201 Fed. Appx. 276, 2006 WL 2852925, at *1 (5th Cir. 2006) (citing Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003)). Thus, plaintiff's complaint must be dismissed in this regard.

IV.   NO LIABILITY OF THE SHERIFF

Harton has named Sheriff Gusman as the only defendant in this case.  Although Harton states in his complaint that the sheriff "has been deliberately indifferent" and that he seeks damages "meant to punish the Sheriff for his attitude in failing to fix [the] leak for months and violation of [his] rights," Record Doc. No. 3 (Complaint at ¶¶ IV and V), he makes no claim that Sheriff Gusman was personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983."  Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

-21-

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115. "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)). In the instant action, plaintiff has failed to establish either that this defendant was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of this defendant and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, Harton must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir.1998).  To state a failure to protect claim under § 1983, Harton must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).  For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Payne v. Pickett, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Harton's complaint against Sheriff Gusman is wholly conclusory and is based on conditions that do not rise to the level of any constitutional violation.  Under these circumstances, plaintiff states no cognizable Section 1983 cause of action against the sheriff, and all claims against him must be dismissed as legally frivolous.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ___12th___ day of August, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

-24-